UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CRIMINAL ACTION NO. 5:04Cr-25-EHJ

UNITED STATES OF AMERICA

VS.

FREDERICK SCOTT HEISNER

**MEMORANDUM OPINION**

    The United States charged Frederick Scott Heisner ("Movant") with three counts of drug and firearms offenses. In February of 2005, Mr. Heisner entered a plea of guilty to those charges, and in May, the Court sentenced Mr. Heisner to serve 60 months in custody. Pursuant to 28 U.S.C. Sec. 2255, the matter is now before the Court on Mr. Heisner's motion to vacate his conviction as to Count 3, which charged possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. Sec. 924c. After examining the transcripts of record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the motion should be denied.

    At the change of plea hearing, Movant readily agreed that the firearms enumerated in the indictment belonged to him, agreed that he possessed them, and further agreed that they were close to the drugs that were the subject of the indictment. However, Movant denied that he possessed the weapons *in furtherance of* the drug trafficking, stating that he wouldn't use them to hurt anyone. He said, "I'm a big deer hunter." (Change of Plea Hearing Transcript at 10-11). Thereupon, the United States undertook to set out the evidence it would present on this issue if the case went to trial. Included in the government's proffer was the information that several of the weapons were

1

handguns, and that one of the weapons was a loaded .22 caliber handgun lying next to drugs on the counter next to a safe. Tr. 13. Drugs, paraphernalia, and a loaded handgun were found inside a safe in the basement. Drugs, long guns and another loaded handgun were in a gun locker. Another loaded handgun was in the bedroom with additional drugs.

Upon further questioning by his attorney and by the Court, Movant admitted that drug trafficking is a dangerous business and that he foresaw the need to protect himself and his inventory. That interchange concluded as follows:

> Defendant: Yes, Your Honor. I just didn't understand. I'm sorry. I didn't mean to make it any longer.
>
> The Court: All right. I'm trying to protect your rights as well as those of the government's. So factually, you understand –
>
> Defendant: Yes, Your Honor.
>
> The Court: – that the pistol on the table with the drugs found could be used if necessary?
>
> Defendant: Yes, Your Honor.
>
> The Court: During a drug transaction?
>
> Defendant: Yes, Your Honor.

Tr. 22.

Movant argues that he was pressured into stating that the firearms were possessed in furtherance of drug trafficking. He contends that he is "factually innocent," and that the record clearly shows his repeated denial that the firearms were possessed in furtherance of drug trafficking.

Upon review of the transcript, the Court concludes that while Mr. Heisner insisted that it was not his intention to hurt anyone, he did admit that one reason for having the guns close to the drugs is that drug trafficking is a dangerous business. While he had not had occasion to use the guns, they

2

were available for use during drug transactions if needed. Whether he had ever used or offered to use one of the weapons during a drug deal is irrelevant; and whether the purpose of the weapons was deterrence or aggression is immaterial for purposes of the statute. What Movant describes as responses to "purely hypothetical" questions is sworn testimony plainly establishing that his keeping the weapons close to the illegal substances was far from coincidental. Rather, the weapons were kept in furtherance of drug trafficking.

Nonetheless, even if the transcript could be read as suggesting that Movant did not concede this element of Count 3, the Court believes that Mr. Heisner did recognize that the evidence was such that the element would be clearly established if he went to trial. There were several handguns. The guns were loaded. They were in several different locations, corresponding to the different locations in which drugs were found. The transcript, viewed as a whole, demonstrates a knowing and voluntary plea.

Movant further argues that his attorney was ineffective in two respects, i.e., (1) in advising Movant to plead guilty to Count 3, and (2) in advising Movant to waive the right to collateral attack. To establish ineffective assistance of counsel, Movant has the burden of demonstrating two components:  First, he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and second, he must show that the deficient performance prejudiced the defense, i.e., caused defendant to be deprived of a "fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove prejudice, petitioner must show a reasonable probability that absent counsel errors, the results of the proceedings would have been different. Lynott v. Story, 929 F.2d 228 (6th Cir. 1991). In the case of a guilty plea, as here, the test for the second component is whether, absent the

deficient attorney performance, the defendant would have made a different decision about entering a plea of guilty. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Mr. Heisner is unable to prove either of the two components with respect to either of his claims. Movant actually makes no attempt to show prejudice. That is, he *does not* state that absent the allegedly deficient performance, he would have forgone the guilty plea and would have insisted instead on proceeding to trial. Neither is it objectively likely that he would make such a decision, in view of the array of evidence against him and the requirements of the law. It is difficult to conceive of a jury that could hear evidence regarding the types and numbers of weapons found, and evidence regarding the location of the loaded handguns and the nearby drugs, and then conclude that the weapons were not possessed in furtherance of the admitted trafficking.

Movant is also unable to show the necessary "deficient performance" as to either of his claims. With respect to his first claim, the record shows that both the plea agreement itself and the hearing colloquy clearly set out the elements of the offense charged in Count III. Mr. Heisner stated in writing and in open court that he understood those legal requirements. His attorney's questions to him were completely consistent with the legal elements of the offense. Further, as explained above, Movant provided testimony fully sufficient to establish guilt of the offense.

With respect to the second claim, Mr. Heisner's position on deficient performance is even weaker than on the first claim. Waiver of the right to collaterally attack a conviction has become a routine part of plea agreements in Western District of Kentucky, and the Sixth Circuit has upheld such waivers. Davila v. United States, 258 F.3d 448 (6th Cir. 2001). As explicitly noted in Davila, such waivers do not bar attacks alleging ineffective assistance with regard to the plea agreement or the waiver. There is no merit to an argument that it is incompetent to advise a client to accept a plea

4

agreement including such waiver.

      An order in conformity has this day entered.